# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------

WILLIAM MATTHEWS, individually and : <br>
on behalf of all others similarly situated : <br>
                                          :     CIVIL ACTION NO.: 18-0561 <br>
           Plaintiff, : <br>
                                          : <br>
    v. : <br>
                                          : <br>
BIOTELEMETRY, INC. d/b/a : <br>
CARDIONET : <br>
                                          : <br>
           Defendant. : <br>

---------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER CERTIFYING THE SETTLEMENT CLASS, GRANTING A SERVICE AWARD, AND <u>APPROVING THE SETTLEMENT AGREEMENT</u>

**MURPHY LAW GROUP, LLC**
Michael Murphy, Esquire
Michael Groh, Esquire
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawyer.com
*Attorneys for Plaintiff*

Dated: April 15, 2019

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS .................................................................................... 2

   A.   Background ................................................................................................. 2

   B.   The Settlement............................................................................................. 4

III. THE PROCEDURES REQUIRED BY THE PRELIMINARY APPROVAL ORDER HAVE
     BEEN CARRIED OUT ...................................................................................... 5

IV.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ........... 7

   A.   The Court Should Find that the Class Notice Was the Best Notice Practical ................. 7

   B.   The Court Should Certify the Settlement Class ............................................... 8

      1.   Rule 23(a) Standards Are Satisfied................................................................. 8

      2.   Rule 23(b)(3) Standards Are Satisfied As Well ............................................. 13

      a)   Common questions predominate over individual issues ........................... 13

      b)   Class resolution is superior to fifty-seven (57) individual actions ........................ 13

      3.   The Class Satisfies FLSA Collective Action Standards ............................... 14

   C.   The Court Should Find that the Settlement Satisfies the Criteria for Final Approval under
        Rule 23(e)................................................................................................... 15

      1.   The Settlement Is Entitled to an Initial Presumption of Fairness .............................. 16

      2.   The Settlement Satisfies the Nine Girsh Factors ....................................... 17

      a)   The complexity, expense, and likely duration of the litigation (factor 1) .................. 18

      b)   The reaction of the class to the settlement (factor 2)................................... 19

      c)   The state of the proceedings and the amount of discovery completed (factor 3)....... 21

      d)   The risks of establishing liability and damages (factors 4 and 5) ............................ 22

      e)   The risks of maintaining the class action through trial (factor 6)............................. 23

      f)   The ability of defendant to withstand greater judgment (factor 7) ............................... 24

      g)   The reasonableness of the settlement fund for monetary relief in light of the best
           possible recovery and attendant risks of litigation (factors 8 and 9) .................................... 24

      h)   The view of experienced counsel weighs in favor of the settlement's fairness.......... 26

V.   THE CLASS REPRESENTATIVE SHOULD BE REWARDED FOR HIS SERVICES TO
     THE CLASS .................................................................................................... 26

VI.  CONCLUSION................................................................................................. 28

## I.      INTRODUCTION

The Class Representative, William Matthews, and the Settlement Class comprised of all individuals contractually engaged as a "Remote Holter Technician" or "Remote Holter Analyst" and who worked between the period between February 9, 2015 to the present, and received an IRS Form 1099 from Defendant for payments for the services rendered ("Class Plaintiffs;" together with Class Representative, "Class Members"), by and through their undersigned counsel of record, hereby submit this Memorandum of Law in Support of their Motion for an Order Certifying the Settlement Class, Granting a Service Award, and Approving the Settlement Agreement.

Plaintiff seeks final approval of the proposed $200,000.00 class and collective action settlement of federal and Pennsylvania wage claims (the "Settlement") brought by the Class Representative, which the Court preliminarily found to be fair, adequate, and reasonable by Order dated December 21, 2018. **Class notice of the Settlement has been completed, the opt-out and objection period, as well as the claims period have passed, and there have been only two (2) opt-outs and no objections.** Additionally, twenty-seven (27) individuals have submitted timely Proof of Claim and Consent to Join Forms.

As discussed more fully below, Plaintiff respectfully requests the Court to enter an Order, substantially in the form attached hereto as Exhibit "1," ordering the following:

1.      Certifying the Settlement Class;

2.      Granting a Service Award to the Class Representative; and

3.      Granting Final Approval of the Settlement Agreement entered into

between Plaintiff and Defendant (the "Settlement Agreement").[1]

## II.      STATEMENT OF FACTS

### A.      <u>Background</u>

On or about February 9, 2018, Plaintiff William Matthews ("Plaintiff") initiated this

action by filing a collective and class action complaint with this Court on behalf of a purported

class of similarly-situated Remote Holter Technicians employed by Defendant.  In his

Complaint, Plaintiff alleged that he and Class Plaintiffs were unlawfully misclassified as

independent contractors and, as a result, were denied overtime compensation under the Fair

Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA").[2]  Plaintiff

has demanded damages, including unpaid compensation, interest, and liquidated damages.

On April 23, 2018, Defendant filed a Motion to Dismiss Count II of Plaintiff's Complaint

(i.e. Plaintiff's claims under the PMWA), contending that Plaintiff, who lived and worked

primarily in Virginia, failed to allege a sufficient nexus between his employment and the

Commonwealth of Pennsylvania, where Defendant's corporate offices are located, in order to

avail himself of the protections of the PMWA.  <u>See</u> ECF No. 10.  On May 7, 2018, Plaintiff filed

a Response in Opposition to Defendant's Motion to Dismiss, arguing that Plaintiff's Complaint

set forth sufficient factual allegations to establish Plaintiff's connections to Pennsylvania for

---

[1] A separate motion will be filed to address approval of the attorneys' fees, costs, and expenses sought by Class
Counsel under the Settlement.

[2] On November 1, 2018, Plaintiff filed an Amended Complaint in which he reasserted his and Class Plaintiffs'
claims against Defendant under the PMWA, including additional factual allegations pertaining to his and Class
Plaintiffs' connections to the Commonwealth of Pennsylvania for purposes of PMWA coverage.  <u>See</u> ECF No. 18.
In his Amended Complaint, Plaintiff also asserted a new count against Defendant under the Pennsylvania Wage
Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, <u>et seq.</u>, alleging that Defendant's purported
misclassification of Plaintiff and Class Plaintiffs also resulted in the denial of certain wages and employee benefits.
<u>See</u> ECF No. 18.

purposes of coverage under the PMWA.  See ECF No. 11.  On May 18, 2018, Defendant filed a

Reply to Plaintiff's Response in Opposition.  See ECF No. 13.

In early July 2018, the Parties, through their counsel, discussed multiple options for case

management, including the possibility that Defendant would stipulate to conditional certification

of the FLSA collective.  The Parties also discussed the possibility of attending an early

settlement conference or mediation to explore the resolution of this matter on a collective/class

basis, and reached a tentative agreement to request a stay in the proceedings in order to do so.

On August 1, 2018, the Court entered an Order granting Defendant's Motion to Dismiss

Count II of Plaintiff's Complaint without prejudice and with leave to amend.  See ECF No. 16.

On August 13, 2018, the Parties entered into a Joint Stipulation for Stay of Proceedings and

Tolling of Claims, which was entered as an Order of the Court on August 20, 2018.  See ECF

No. 17.  Thereafter, Defendant provided Plaintiff with thousands of pages of payroll and/or

billing records, along with other company documents, which allowed Plaintiff to conduct a

thorough investigation of his potential claims and those of potential Class Members.

On October 11, 2018, the parties participated in a full-day mediation session with the

Honorable Thomas M. Blewitt (Ret.) of JAMS.  With the assistance of Judge Blewitt, the Parties

reached an agreement to resolve this action in its entirety, which they subsequently memorialized

in a written settlement agreement as set forth in the Joint Stipulation of Settlement and Release

(hereinafter "Settlement Agreement"), attached hereto as Exhibit 2.

B.     **The Settlement**

The total maximum possible settlement amount in this case is $200,000.00 (the "Settlement Amount").[3]  See Exhibit 2.  Of that amount, approximately $114,732.51 (the "Settlement Fund") has been made available for distribution to Class Members, and the remaining amount is sought by Class Counsel for attorneys' fees, costs, and expenses, the Class Representative for a Service Award, and the Claims Administrator for claims administration expenses.  See Order of the Court dated December 21, 2018, attached hereto as Exhibit "3."  As of the date of this filing, twenty-seven (27) Class Plaintiffs have submitted timely Proof of Claim and Consent to Join Forms in order to receive payments from the Settlement Fund.

Participating Class Members will receive payments from the Settlement Fund, on a pro rata basis, based on the degree to which they were economically-impacted by the alleged wage and hour violations of Defendant.  The specific apportionment of the Settlement Fund is described in detail in Section 10(b) of the Settlement Agreement.  See Exhibit 2, Section 10(b). Based on preliminary calculations using the formula described in Section 10(b) of the Settlement Agreement, approximately $63,150, or approximately fifty-five percent (55%) of the Settlement Fund, has been claimed as of the date of this filing.[4]

Pursuant to the Settlement Agreement, the amount each Class Member receives will be divided into two (2) portions and paid in the form of one check.  The first portion, equal to fifty percent (50%) of the gross amount, will be subject to state and federal withholding taxes and any other applicable payroll deductions owed by the Class Member as a result of the payment.  A W-

---

[3] This amount does not include certain additional payments by Defendant identified in the Settlement Agreement, including the employer's share of payroll taxes on the wage portion of individual settlement checks and reimbursement to Plaintiff's Counsel for the costs of the October 11, 2018 mediation.
[4] Pursuant to Section 14(b) of the Settlement Agreement, the value of any unclaimed shares of the Settlement Fund will revert to Defendant.

4

2 will be issued in connection with the first portion.  The second portion, equal to fifty percent (50%) of the gross amount, will not be subject to any withholdings, and will be subject to the issuance of an IRS Form 1099.  Collectively, the two portions paid to Class Members will be referred to as the Class Members' "Settlement Award."  The Claims Administrator will mail the Settlement Award checks to Class Members following final approval of the Settlement by the Court.  The Settlement Award checks will remain valid and negotiable for a period of ninety (90) days from the date of the mailing and will thereafter automatically be canceled if not cashed. See Class Notice and Exclusion/Opt-Out Form Sent to Class Members, attached hereto as Exhibit "4," § III.

Based on initial calculations, which may increase or decrease based on a number of factors, Class Counsel believes Participating Class Members may receive amounts ranging from a minimum payment of $50.00 up to a maximum of approximately $20,000.00, with an average payout of approximately $2,300.00, which Class Counsel believes represents a substantial portion of the overtime compensation and wages which Class Members could reasonably have expected to prove at trial.

## III.   THE PROCEDURES REQUIRED BY THE PRELIMINARY APPROVAL ORDER HAVE BEEN CARRIED OUT

By Order dated December 21, 2018 ("Preliminary Approval Order"), the Court granted preliminary approval to the Settlement as fair, reasonable, and adequate and in the best interest of Plaintiff and all Class Members, as well as being the most expeditious, efficient, and fair means of resolving their claims.  See Exhibit 3, ¶ 2.

The Court, in its Preliminary Approval Order, preliminary certified for settlement purposes only, the following settlement class:

**All individuals contractually engaged as a "Remote Holter Technician" or "Remote Holter Analyst" and who worked between the period between February 9, 2015 to the present, and received an IRS Form 1099 from Defendant for payments for the services rendered.**

See Exhibit 3, ¶ 4.  In the Court's December 21, 2018 Order, the Court appointed William Matthews as the Class Representative, the undersigned as Class Counsel, and appointed RG/2 Claims Administration LLC as Claims Administrator.  See Exhibit 3, ¶¶ 5-7.

The Court also ordered the Class Notice to be sent to all Class Members via first class mail, along with an Exclusion/Opt-Out Form and Proof of Claim and Consent to Join Forms to their last known address no later than January 4, 2019.  See Exhibit 3, ¶ 8.  The Court ordered that Class Members sign and mail their Exclusion/Opt-Out Forms requesting exclusion from the settlement within forty-five (45) days from the date notice was mailed in order to opt-out of the Settlement.  See Exhibit 3, ¶ 9.  The Court also ordered that Class Members execute and return their Proof of Claim and Consent to Join Forms and Forms W-4 and W-9 (together with any state forms required to be completed for processing of settlement payments) to the Claims Administrator within seventy-five (75) days from the date notice was mailed in order to receive a payment out of the Settlement Fund.  Finally, the Court also ordered that in order for any Class Member to object to the Settlement or to have any papers or briefs considered by the Court at the final approval hearing set for April 22, 2019, said Class Member must file with the Court and serve upon the parties' counsel a written notice of intention to appear at the Settlement Hearing, together with copies of all papers and briefs to be considered, on or before April 15, 2019.  See Exhibit 3, ¶ 12.

On January 4, 2019, the Claims Administrator mailed the Class Notice and Exclusion/Opt-Out Forms to fifty-seven (57) class members based on data provided by Defendant.  See Decl. of Melissa Baldwin, attached hereto as Exhibit "5" at ¶¶ 3-5.  Pursuant to

the Court's Preliminary Approval Order, Class Members were informed in the Class Notice that the deadline for returning executed Opt-Out/Exclusion forms was February 18, 2019, the deadline for returning executed Proof of Claim and Consent to Join Forms and tax documentation was March 20, 2019, and for filing and serving said written notice of intention to appear was April 15, 2019.  See Exhibits 3, 5.

**The Claims Administrator received two (2) Exclusion/Opt-Out Forms**.  See Exhibit 5, ¶ 9; see also ECF No. 24.  **The Claims Administrator also did not receive any objections to the settlement**, see Exhibit 5, ¶ 10, nor has Plaintiff's Counsel received any objections or any notices of intention to appear at the final approval hearing.  Finally, the Claims Administrator received Proof of Claim and Consent to Join Forms and tax forms from twenty-seven (27) Class Members.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    The Court Should Find that the Class Notice Was the Best Notice Practical

Rule 23(c)(2) requires the court to direct Class Members the "best notice practical" under the circumstances, including "individual notices to all Class Members who can be identified through reasonable effort."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).  As the United States Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2).  Id.  Where the names and addresses of the class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practical.'"  Id. at 75.  Here, the class members' names and addresses are easily ascertainable. Indeed, mailing addresses were found for all members of the settlement class, as all class members were previously engaged to provide services for and/or were employed by Defendant. See Exhibit 5, ¶¶ 4-7.

7

The Court should find that the Class Notice sent was adequate, then proceed to determine the fairness and adequacy of the Settlement Agreement, and order its final approval, with the knowledge that all Class Members have been given the opportunity to participate fully in the claims, exclusion, and approval process.

## B. The Court Should Certify the Settlement Class

Certification of the Settlement Class identified in the Settlement Agreement and the Court's Preliminary Approval Order is appropriate under Rule 23(a) and 23(b)(3) for the reasons set forth below. In addition, certification of the Settlement Class is appropriate under 29 U.S.C. § 216(b).

### 1. Rule 23(a) Standards Are Satisfied

The Settlement Class meets the standards of Rule 23(a). Under Rule 23(a), a settlement class must meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In re Comm. Bank of N. Va., 418 F.3d 277, 302 (3d Cir. 2005), rev'd on other grounds, 622 F.3d 275 (3d Cir. 2010); In re Wafarin Sodium Antitrust Litig. ("Wafarin Sodium"), 391 F.3d 516, 527 (3d Cir. 2004) (settlement class certification decision applying Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997), in the context of a nationwide products liability class action); In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 308-216 (3d Cir. 1998), rev'd on other grounds, 278 F.3d 175 (3d Cir. 2002).

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. See NEWBERG ON CLASS ACTIONS (4th ed. 2002) § 305 (class of 40 or more raises presumption that numerosity requirement met). "Impracticable does not mean impossible." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993); Peoples v. Sebring Capital Corp., 2002 U.S. Dist. LEXIS 4104, 7 (N.D. Ill. 2002); ("Impracticability, not impossibility, is

the touchstone."  Regarding the weight accorded to class size, the numerosity requirement "imposes no absolute limitations," but rather, it calls for an "examination of the specific facts of each case."  General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980).  Indeed, this Court "may certify a class even if it is composed of as few as 14 members."  Grant v. Sullivan, 131 F.R.D. 436, 446 (M.D. Pa. 1990); Manning v. Princeton Consumer Discount Company, Inc., 390 F. Supp. 320, 324 (E.D. Pa. 1975); aff'd, 553 F.2d 102 (3d Cir. 1976), cert. denied, 429 U.S. 865 (1976).  By contrast, a class of twenty (20) or fewer is "usually insufficiently numerous," while "classes with between 21 and 40 members," so-called "mid-sized classes," "may or may not meet the numerosity requirement depending on the circumstances of each particular case."  Id. (citing Moore's Federal Practice § 23.22) (internal quotation marks omitted); see also Grant v. Sullivan, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (noting that a court "may certify a class even if it is composed of as few as 14 members").  However, the Third Circuit has held that when the proposed class has less than 40 members, the court's numerosity analysis should be "particularly rigorous."  Id.

Here, the proposed Settlement Class is comprised of a total of fifty-seven (57) individuals (i.e. those who did not submit a timely Opt-Out/Exclusion form) who all worked for Defendant in the positions of Remote Holter Technician or Remote Holter Analyst, were all paid the same way, were all subject to the same payroll and time-keeping practices, and were all employed by Defendant during the liability period.  See Exhibit 5, ¶¶ 3-9; Exhibit 3, ¶ 4.  As a result, the proposed Settlement Class clearly satisfies the numerosity requirement.[5]

---

[5] In determining whether a class is sufficiently numerous in a claims-made settlement, courts consider the number of *potential* settlement class members, rather than the number of individuals who ultimately return a claim form.  See e.g. Hernandez v. Immortal Rise, Inc., 306 F.R.D. 91, 97 (E.D.N.Y. 2015) (finding numerosity factor met where, in wage and hour settlement involving an estimated one hundred and fifty (150) potential claims members, defendant provided mailing addresses for approximately one hundred (100) former employees, and only twenty-two (22) individuals ultimately submitted claim forms).

The <u>commonality</u> requirement is met if there is at least one question of fact or law common to the class.  See <u>Winfarin Sodium</u>, 391 F.3d at 527-28.  "[P]roposed class members must share at least one question of fact or law in common with each other."  <u>Id.</u>  Here, all members of the putative Class share the same factual and legal claim: that Defendant, through its policy and practice classifying Class Members as independent contractors, failed to pay Class Members overtime compensation and wages under the PMWA and WPCL.

Class Members seek similar legal remedies pursuant to the federal and Pennsylvania wage and hour laws applicable to their claims.  Common legal questions include, but are not limited to: whether Defendant unlawfully misclassified Class Members as independent contractors under the FLSA and PMWA, resulting in their being denied overtime compensation and wages for work performed; whether Class Members were improperly denied certain benefits of employment under the WPCL as the result of their misclassification; and whether Class Members were entitled to liquidated damages under state law.  These similar legal and factual issues clearly satisfy the commonality requirement of Rule 23(a)(2).

The <u>typicality</u> requirement is met if the claims of the class representative are typical of the claims of the class; they need not be identical.  <u>In re Comm. Bank of N. Va.</u>, 418 F.3d at 303; <u>Warfarin Sodium</u>, 391 F.3d at 531-32.  "The concepts of commonality and typicality are broadly defined and tend to merge."  <u>In re Comm. Bank of N. Va.</u>, 418 F.3d at 303 (quoting <u>Baby Neal by Kanter v. Casey</u>, 43 F.3d 48, 56 (3d Cir. 1994)).  Challenges to "the same unlawful conduct which affects both the named plaintiff and the putative class members usually satisfy the typicality requirement."  <u>Id.</u>  Additionally, "[t]he mere fact that some members of the class may have additional state or federal law claims, not asserted by the named Plaintiff, does not preclude a finding of typicality."  <u>Id.</u>  In the instant matter, the same unlawful conduct equally affected the

Class Representative and Class Members.  The Class Representative and Class Members have claims that Defendant's misclassification of its Remote Holter Technicians and Remote Holter Analysts resulted in their being denied overtime compensation, wages, and certain benefits under the FLSA, PMWA, and WPCL.  Thus, the typicality requirement is also satisfied.

The class members are adequately represented if: (1) the interests of the class representative are not in conflict with the interests of the class members, and (2) class counsel are experienced, vigorously prosecuted the action, and acted at arm's length from the defendant, See Winfarin Sodium, 391 F.3d at 532; Community Bank, 418 F.3d at 307.  Those standards are clearly met here.

Under the proposed Settlement Agreement, all Class Members who do not properly exclude themselves from the Settlement and who submit timely Proof of Claim and Consent to Join Forms will receive payments from the Settlement Fund on a pro rata basis, based on the degree to which they were economically harmed by Defendant's pay practices, as described above.  Thus, there is no conflict of interest in the allocations.

While the Class Representative stands to receive a service award, the amount to be awarded constitutes only a fraction of the total $200,000.00 Settlement Amount.  After notice and an opportunity to object, **NO** Class Members have objected to the service award to the Class Representative.  Accordingly, there is no improper conflict of interest between the Class Representative and Class Counsel and any other member of the class.

Likewise, the Class Representative and Class Counsel have prosecuted the action vigorously on behalf of all Class Members.  The parties reached settlement of these claims only after Class Counsel conducted a thorough investigation of the claims against Defendant by Plaintiff and the Class to be finally certified under the Settlement Agreement.  This investigation

included, but was not limited to, reviewing thousands of pages of payroll and billing data,

analyzing the individual damages of each Class Member, consulting extensively with the

Plaintiff, and performing numerous and time-consuming calculations with respect to the potential

damages in this matter.  Class Counsel has also conducted extensive research regarding the

FLSA, PMWA, and WPCL.

Based upon their independent investigation and evaluation, Class Counsel believes that

the settlement with Defendant for the consideration and on the terms set forth in the Agreement

is fair, reasonable, and adequate and is in the best interest of Plaintiff and putative members of

the class in light of all known facts and circumstances, including the risk of not achieving class

certification, the financial stability of Defendant, defenses asserted by Defendant, and numerous

potential appellate issues.

Based on Class Counsel's investigation of the Class Members' claims against Defendant,

it is Class Counsel's belief that the payments Class Members will receive from the Settlement

Fund represent a significant recovery of the unpaid wages and overtime compensation that could

reasonably have been proven at trial.  This is even after attorneys' fees, litigation expenses, and

class administration expenses are deducted from the proposed Settlement Amount.  Finally, Class

Counsel engaged in an arms-length settlement negotiation with Defendant, including a full day's

mediation session with the Honorable Thomas M. Blewitt (Ret.) of JAMS, which ultimately

resulted in the Settlement Agreement reached herein.  Thus, Class Counsel's prosecution of this

case has been sufficiently vigorous to meet the requirement of Rule 23(a)(4).

Based on the foregoing, the requirements of Rule 23(a) are met with respect to the

proposed Settlement Class.

2.      **Rule 23(b)(3) Standards Are Satisfied As Well**

The proposed Settlement Class also meets the requirements of Rule 23(b)(3).  Rule 23(b)(3) allows class certification of a settlement class where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability of trial is not required.  Amchem, 521 U.S. at 618-20; Prudential, 148 F.3d at 313-16.

a)      **Common questions predominate over individual issues**

Rule 23(b)(3)'s predominance element "requires that common issues predominate over issues affecting only individual class members."  Warfarin, 391 F.3d at 528.  As set forth above, the Class Representative and the Class Members share core, overriding common issues of fact – Defendant's misclassification of them as independent contractors, resulting in the denial of overtime compensation and certain wages and benefits – that overwhelm any other factual issue present in the claims of individual Class Members.  The legal questions of each Class Member are also similar, in that they involve whether Class Members were misclassified as independent contractors under the FLSA and PMWA; whether Class Members were improperly denied certain benefits of employment under the WPCL as the result of their misclassification; and whether Class Members are entitled to liquidated damages under the FLSA and WPCL.

b)      **Class resolution is superior to fifty-seven (57) individual actions**

Furthermore, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.  See Warfarin, 391 F.3d at 533.  The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication."  Id. at 534.  The Settlement Class satisfies the

superiority requirement because of the considerable number of class members and the low value of claims in relation to the expenses of prosecuting a lawsuit.  The alternative to this class action is individual lawsuits and/or separate lawsuits for relatively small amounts of damages.  These claims would prove uneconomical for potential Plaintiff because litigation costs could dwarf potential recovery.  By contrast, the class action vehicle "facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes."  Id.; Prudential, 148 F.3d at 315-16.

In sum, certification of the proposed settlement class is appropriate under Federal Rules of Civil Procedure 23(a) and 23(b)(3).  Thus the Court should certify the proposed class for settlement purposes only.

### 3.    The Class Satisfies FLSA Collective Action Standards

The Settlement Class also satisfies the criteria for maintenance of a FLSA collective action.  The FLSA's collective action provision allows one or more employees to bring an action for overtime compensation "on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  See also Evans v. Lowe's Home Centers, Inc., 2006 U.S. Dist. LEXIS 32104, at *15 (M.D. Pa. May 18, 2006) (FLSA collective action device serves objectives of "lowering cost and limiting the controversy to one proceeding to efficiently resolve the common issues of law and fact.")).  This lenient standard is considerably "less stringent" than the proof required pursuant to Fed. R. Civ. P. 20(a) for joinder or Fed. R. Civ. P. 23 for class certification.  Grayson v. KMart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996), cert. denied, 117 S. Ct. 435 (1996).  For an opt-in class to be created under 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated."  Id. Plaintiff's claims need not be identical to the potential opt-in, they need only be similar.  Id.

14

Plaintiff need only demonstrate "a reasonable basis" for the allegation that a class of similarly-situated persons may exist. Id. at 1097.

The Court determined previously, in its December 21, 2018 Order, that all individuals contractually engaged as a "Remote Holter Technician" or "Remote Holter Analyst" and who worked between the period between February 9, 2015 to the present, and received an IRS Form 1099 from Defendant for payments for the services rendered were "similarly-situated" within the meaning of 29 U.S.C. § 216(b).  See Exhibit 3, ¶ 3.  This ruling is also consistent with the Court's preliminary certification under Rule 23 of the Class, which is subject to a more stringent standard.  See Exhibit 3, ¶¶ 3-4.  The Court's "similarly situated" determination should therefore stand.

**C.     The Court Should Find that the Settlement Satisfies the Criteria for Final Approval under Rule 23(e)**

The "decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court[.]"  Warfarin, 391 F.3d at 535 (quoting Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975)); Prudential, 148 F.3d at 317.  "There is an overriding public interest in settling class action litigation, and it should therefore be encouraged." Warfarin, 391 F.3d at 535; see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Additionally, where, as here, settlement enables Plaintiff to avoid the uncertainties of litigation, including the potential that class certification will be denied, settlement is especially favored.  As one Pennsylvania district court has observed, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." In re Chambers

15

Dev. Sec. Litig., 912 F. Supp. 822, 838 (W.D. Pa. 1995).  See also Lazy Oil Co. v. Witco Corp.,

95 F. Supp. 2d 290, 330 (W.D. Pa. 1997) ("Class actions, with their notable uncertainties,

difficulties of proof, and length, make application of this policy in favor of settlement

particularly appropriate."); West Virginia v. Chas. Pfizer & Co., 314 F. Supp. 710, 743-44

(S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of

the outcome of litigation, such confidence is often misplaced."), aff'd, 440 F.2d 1079 (2d Cir.

1971).

A class action may not be settled under Rule 23(e) without a determination by the district

court that the proposed settlement is "fair, reasonable and adequate."  Warfarin, 391 F.3d at 534;

Prudential, 148 F.3d at 316.  The Third Circuit engages in a two-step process to determine the

fairness, reasonableness, and adequacy of a proposed settlement.  First, it determines whether the

settlement is entitled to an initial presumption of fairness under a four-step analysis.  See

Warfarin, 391 F.3d at 535.  Second, the Court considers the settlement in light of the nine

"Girsh" factors.  See id.  In the instant matter, the Settlement Agreement satisfies both of these

tests.

### 1.    The Settlement Is Entitled to an Initial Presumption of Fairness

Courts in the Third Circuit are to presume fairness when reviewing a proposed settlement

where: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient

discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only

a small fraction of the class objected."  Id. at 535.

In Warfarin, the Third Circuit upheld the district court's determination that the

presumption of fairness properly attached because the settlement resulted from intense arm's

length negotiations between experienced counsel and was objected to by only a small fraction of

the purported class.  Id. at 535.  See also In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631,

640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached

in arm's length negotiations between experienced, capable counsel after meaningful discovery.");

In re Rent-Way Sec. Litig., 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("settlement negotiations

took place at arm's length between highly experience[d] and competent counsel.  Their

assessment of the settlement as fair and reasonable is entitled to considerable weight.").

        The settlement here is likewise entitled to the presumption of fairness.  The settlement

resulted from vigorous arms-length negotiations between experienced counsel following the

production by Defendant of thousands of pages of payroll and billing data pertinent to Class

Members' claims.  On October 11, 2018, the parties participated in a full day's mediation session

with the Honorable Thomas M. Blewitt (Ret.) of JAMS.  With the assistance of Judge Blewitt,

the parties reached the preliminarily-approved settlement discussed herein.  Finally, and equally

importantly, **NO** class members have objected to the settlement.  See Exhibit 5, ¶ 10.  By

contrast, fifty-seven (57) class members will participate in the settlement.[6]  See Exhibit 5, ¶¶ 3-8.

Based on the aforementioned, and in accordance with Third Circuit law, the settlement should be

presumed to be fair.

### 2.    The Settlement Satisfies the Nine Girsh Factors

        The Third Circuit has identified nine (9) factors to be considered when determining

whether a proposed class action settlement is fair, reasonable, and adequate.  These factors are:

(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to

---

[6] Of these individuals, twenty-seven (27), or approximately fifty percent (50%) of the Class, have submitted timely
Proof of Claim and Consent to Join forms.  Of the remaining Class Members (i.e. those who did not opt out but have
not submitted a Proof of Claim and Consent to Join form), Class Counsel estimate that twelve (12), or
approximately forty percent (40%), only stood to receive the minimum payment (i.e. $50) or a slightly greater
amount.

the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the

risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining

the class action through the trial; (7) the ability of the Defendant to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the

attendant risks of litigation.  Warfarin, 391 F.3d at 534-35 (citing Girsh, 521 F.2d at 157);

Prudential, 148 F.3d at 317.  In addition, in appraising the fairness of the proposed settlement, the

view of experienced counsel favoring settlement is entitled to considerable weight.  These factors

should be viewed with the initial presumption of fairness in mind.  See Warfarin, 391 F.3d at

535.

   The Settlement here is fair, reasonable, and adequate in all of these respects.

     a)  The complexity, expense, and likely duration of the litigation
         (factor 1)

   By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to

avoid significant expense, delay, and the risk that class certification will be denied, and instead

ensure recovery for the class.  This is a collective/class action brought under both the FLSA and

Pennsylvania wage and hour statutes.  Preparing and putting on evidence concerning the

complex factual and legal issues at trial would have consumed tremendous amounts of time and

resources for both sides, as well as required substantial judicial resources to adjudicate the

parties' disputes.  Additional discovery would have been required by Plaintiff to establish

liability and damages, which would have included taking depositions of Defendant's

management, including, most likely, each and every supervisor to whom Class Members

reported as well as members of Defendant's Payroll and Human Resources Departments.

Defendant would likely have also sought the depositions of at least a large sample of the current

and former employees who would file Opt-In Consent Forms to participate in this lawsuit. Moreover, the fact that Class Members are currently spread out among at least thirteen (13) states, according to records provided by Defendant, would likely have increased the burden (both in terms of costs and time) associated with conducting class-wide discovery in this matter.

A complicated trial would have been necessary, featuring extensive testimony from Defendant's upper management, the Class Representative, and numerous Class Members, as well as expert testimony regarding damages. Indeed, a trial of the damages issue, even on a representative basis, would be costly and would defer resolution significantly. Any judgment would have likely been appealed, thereby extending the duration of the litigation.

On the other hand, the settlement of this matter has made monetary relief available to Class Members in a prompt and efficient manner. Of the fifty-seven (57) Class Members who were entitled to receive payment for their claims, twenty-seven (27) will be entitled to receive payment pending final approval of the parties' settlement, and stand to receive a significant recovery of damages that could reasonably have been proven at trial. Accordingly, this first Girsh factor weighs in favor of approval of the settlement.

b)      The reaction of the class to the settlement (factor 2)

The reaction of the class has been more than 96% percent positive. Out of a class of fifty five (57) people, **no** class members have objected to the settlement and **only two** have submitted timely requests for exclusion from the settlement. See Exhibit 5, ¶¶ 3-7. The lack of objectors and opt-outs weighs in favor of approval of the settlement. See Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993); Erie County Retirees Assoc. v. County of Erie, 192 F. Supp. 2d 369, 374 (W.D. Pa. 2002) (holding that the fact there have been no objections to the settlement weighs in favor of approving settlement); In re Rent-Way Secs. Litig., 305 F. Supp. 2d

491, 515 (W.D. Pa. 2003) (the absence of substantial objections by class members to the fee

application supports the reasonableness of Counsel's request); In re Cmty. Bank of N. Va., 2008

U.S. Dist. LEXIS 62787, at *27-28 (W.D. Pa. Aug. 14, 2008) ("The small number of class

members who chose to opt out or object relative to the size of the class supports approval of the

settlement."); In re SmithKline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 530 (E.D. Pa.

1990) ("Both the utter absence of objections and the nominal number of shareholders who have

exercised their right to opt out of this litigation militate strongly in favor of approval of the

settlement."); Gilman v. Independence Blue Cross, 1997 U.S. Dist. LEXIS 15481, at *20-21

(E.D. Pa. Oct. 6, 1997) ("The small number of opt-outs and the absence of any opposition to the

settlement strongly weigh in favor of approval."). The number of opt-outs and objections in this

case is not just small, it is nearly **zero**. See Exhibit 5, ¶¶ 6-7.[7]

Moreover, the settlement participation rate achieved in this matter – i.e. approximately

fifty percent (50%) of the individuals to whom a copy of the Class Notice was successfully

mailed – is "well above average" for a claims-made settlement. See Hernandez v. Immortal

Rise, Inc., 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (twenty percent (20%) participation rate); see

---

[7] At least one study found that while the rate of objection to a settlement is negatively correlated with the likelihood
that the settlement will be approved, there was no evidence to suggest that the opt-out rate had any effect on
settlement approval.  Theodore Eisenberg & Geoffrey Miller, The Role of Opt-Outs and Objectors in Class Action
Litigation: Theoretical and Empirical Issues, 57 VAND. L. REV. 1529, 1533 (2004).  Eisenberg and Miller found,
in pertinent part, that:

> [T]he percentage of objectors was greater in cases where the settlement was rejected than in cases
> where the settlement was approved. This finding suggests that courts do take the percentage of
> objectors into account, at least to some extent, when ruling on the fairness of settlements. Assuming
> judicial decisions approving or disapproving settlements are generally accurate, this finding also
> suggests that levels of objection provide some evidence of a settlement's fairness, adequacy, and
> reasonableness. When it comes to opt-outs, however, the results are not as predicted: the mean
> percentage of opt-outs in approved settlements was in fact greater than the mean percentage of opt-
> outs in disapproved settlements (although the median percentage of opt-outs was higher in
> disapproved settlements than in approved ones).

Id. at 1564.  Furthermore, another study found that "Class members are considerably more likely to opt out
of mass tort, employment, and commercial litigation, where individual recoveries are generally higher, and
less likely to opt out of consumer cases, where individual recoveries are generally lower."  Barbara J.
Rothstein & Thomas E. Willing, Managing Class Action Litigation: A Pocket Guide for Judges at 20 (2005).

also 2 McLaughlin on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range.").  Accordingly, this factor weighs strongly in favor of approving the settlement.

c)   The state of the proceedings and the amount of discovery completed (factor 3)

In examining the stage of the litigation at which a settlement was reached, the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  Warfarin, 391 F.3d at 537.  Under this standard, Plaintiff were clearly in a position to make the necessary risk assessments in the context of settlement negotiations.

At the time this case was submitted to the Court for preliminary approval of the class-wide settlement, the parties had engaged in significant motions practice as well as pre-mediation discovery.  Prior to the October 11, 2018 mediation, when the parties arrived at the preliminary-approved settlement discussed herein, the parties conducted thorough investigations of the facts and underlying claims in this case.  Class Counsel undertook extensive research and preparation for this case, including participation in numerous discussions with the Class Representative and Opt-In Plaintiffs concerning the terms and conditions of their employment, collection and detailed investigation of payroll records and relevant company documents, and review of the relevant statutes and case law.  Moreover, in advance of the mediation session held before Judge Blewitt last October, Defendant provided Plaintiff with thousands of pages of payroll data and billing records, along with other company documents specifically requested by Plaintiff, which allowed Plaintiff to conduct a thorough investigation of his potential claims and those of potential class members.

Counsel engaged in vigorous arms-length negotiations.  On October 11, 2018, the parties participated in a full day's mediation session with the Honorable Thomas M. Blewitt (Ret.) of

21

JAMS.  With the assistance of Judge Blewitt, the parties reached the preliminarily-approved settlement discussed herein.  With the assistance of Judge Blewitt, the parties reached the conditional settlement discussed herein.

Class Counsel adequately appreciated the merits of the case before negotiating and the proposed Settlement represents the result of negotiations between informed parties who were able to make well-reasoned judgments about the merits of the case and the settlement.  This factor strongly favors approval of the settlement.

    d)  <u>The risks of establishing liability and damages (factors 4 and 5)</u>

A trial in this case would involve significant risks to Class Members because of the fact-intensive nature of proving liability under both the FLSA and Pennsylvania's wage and hour laws, and in light of the defenses available to Defendant, which would pose substantial risk to both liability and damages.  The nature of the Plaintiff's allegations and the factual issues involved requires Plaintiff to prove that Defendant misclassified Class Members as independent contractors and demonstrate, in the absence of accurate time keeping records, the amount of hours they worked per week during the liability period.  This would present a significant hurdle for Plaintiff to overcome under both federal and state law theories of liability.

In addition, Plaintiff and Class Plaintiffs were also faced with the hurdle of not only showing they that did not receive overtime compensation pursuant to the FLSA, but also with the hurdle that they must prove that they have suffered and are entitled to damages.  Again, this determination would be very fact-intensive and complex, particularly considering the individual defenses Defendant could attempt to raise, including: (a) that Class Members were properly classified as independent contractors, and thus not entitled to the payment of minimum wages and overtime compensation under the FLSA and PMWA; (b) that the level of managerial and

administrative control exercised by Defendant over Class Members varied significantly over time and/or among Class Members; (c) that, even were Class Members to prove that they were misclassified as independent contractors under federal or state law, they nevertheless did not meet the criteria for participation in Defendant's employee benefits plans; (d) that Plaintiff's proposed ratio for determining the amount of hours worked by Class Members (i.e. 45 minutes per completed holter scan, 80 minutes per completed cardio key scan) is disproportionately high, resulting in a significant overestimate of the amount in wages and overtime compensation thus owed for hours worked; and (e) that Class Members, as remote employees largely working outside the Commonwealth of Pennsylvania, were not entitled to the protections of the Pennsylvania wage and hour laws.

Finally, and most importantly there would be a substantial risk that Defendant could avoid or at least substantially reduce its liability by successfully defeating class certification. While Class Counsel believes the class' claims are meritorious, Class Counsel are experienced and realistic, and understand that the risks involving class certification, resolution of liability issues, the outcome of the trial, and the inevitable appeal process, are inherently uncertain in terms of both outcome and duration.  This factor strongly favors approval of the settlement.

   e)  <u>The risks of maintaining the class action through trial (factor 6)</u>

The Court's decision to certify this Class is for settlement purposes only.  Were this case to continue in litigation, Plaintiff would face a substantial risk that class certification would be denied because of the number and variety of individual questions as to degree of control exercised by Defendant over the work performed by Class Members, the number of hours Class Members worked in excess of forty (40) hours per work week, and the extent to which Class Members were actually performing compensable work during the hours alleged.  Moreover, the

fact that Class Members were working remotely from home during the liability period, and reporting to several office locations across multiple states, would likely increase the obstacles to achieving class certification.  Thus, this factor weighs in favor of approving the settlement.

      f)      <u>The ability of defendant to withstand greater judgment (factor 7)</u>

"Standing alone . . . the determination that a defendant could withstand a greater judgment "does not carry much weight in evaluating the fairness" of a settlement.  <u>Hoffman v. Wells Fargo & Co.</u>, 2013 U.S. Dist. LEXIS 189337, 10 (E.D. Pa. Feb. 7, 2013) (citations omitted); see <u>Lazy Oil Co.</u>, 95 F. Supp. 2d at 318 (settling defendant's ability to pay greater amounts was outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial).  As such, this factor is largely inapplicable in this case.

      g)      <u>The reasonableness of the settlement fund for monetary relief in light of the best possible recovery and attendant risks of litigation (factors 8 and 9)</u>

Class Counsel determined that this case presents significant risks that mitigate toward compromise.  Under the Settlement, Defendant will pay a considerable amount, up to a total of $200,000, which will be used to compensate class members pursuant to the claims procedure in the Settlement Agreement.  <u>See</u> Exhibit 2.  Based on initial calculations, which may increase or decrease based on a number of factors, Class Counsel believes Participating Class Members may receive amounts ranging from a minimum payment of $50.00 up to a maximum of approximately $20,000.00, with an average payout of approximately $2,300.00, which Class Counsel believe represents a substantial portion of the wages and overtime compensation which Class Members could reasonably expect to prove at trial.[8]  This substantial amount is calculated after attorneys' fees, litigation expenses, the requested service award, and class administration

---

[8] <u>See</u> supra, footnote 2.

expenses are deducted from the proposed Settlement Amount. It is Class Counsel's belief that the aforementioned amount represents a significant recovery for Class Members in light of the risks associated with continued litigation, including the risk that class certification would be denied.

The $200,000.00 Settlement Amount provided for by the settlement represents a good value given the attendant risks of litigation. In light of the risks involved in continuing this class action, the settlement is well within the range of reasonableness. In fact and as already mentioned, it is Class Counsel's belief that the aforementioned amount represents a significant recovery of the overtime wages that could reasonably have been proven at trial taking into account the uncertainty of proving that Class Members were misclassified as independent contractors and the amount of any unpaid minimum wages and/or overtime compensation thus denied in violation of the FLSA/PMWA.

Plaintiff acknowledge that, had Plaintiff and Class Plaintiffs succeeded in all claims, recovery may have been greater. However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 628 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983); see also City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); Lazy Oil Co. v. Witco Corp., 95 F. Supp. 2d 290, 318 (W.D. Pa. 1997) (settling defendant's ability to pay greater amounts was outweighed by the risk that the Plaintiff would not be able to achieve any greater recovery at trial); Cagan v. Anchor Say. Bank FSB, 1990 WL 73423, at *12-43 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over

objections that "best possible recovery would be approximately $121 million"); Brooks v.

American Export Indus., Inc., 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. 1977)

(approving settlement of less than 1 percent of the best possible recovery).  In sum, this factor

favors approval as well.

> h)      The view of experienced counsel weighs in favor of the
>         settlement's fairness

The approval of the settlement is proposed by experienced and reputable employment

counsel.  The parties also attended a full day's mediation session with the Honorable Thomas M.

Blewitt (Ret.) of JAMS.  Based on their experience in this type of litigation, it is Class Counsel's

view that the Settlement represents a fair, reasonable, and adequate resolution of this case in light

of the risks and costs associated with continued litigation.

When considered together, all of the above factors support final approval of the proposed

Settlement under Rule 23(e).  Because the Settlement is a "fundamentally fair, adequate, and

reasonable" resolution of the disputed issues, it should be finally approved by the Court through

entry of the Proposed Order, attached hereto as Exhibit 1.

## V.     THE CLASS REPRESENTATIVE SHOULD BE REWARDED FOR HIS SERVICES TO THE CLASS

It is not unusual for the class representative in wage and hour collective/class actions to

be paid an incentive award in recognition of his or her service to the entire class.  As part of the

Settlement and pending Court approval, Class Representative William Matthews will receive

$5,000.00 from the Settlement Amount, in recognition of the efforts he has undertaken and the

risk he has incurred on behalf of the class.  See Exhibit 2.  This amount is reasonable and is not

out of proportion to the overall settlement or the average payout per class member, and is

therefore an appropriate service award.  See In re Auto. Refinishing Paint Antitrust Litig., 2008

WL 63269, at *7-8 (E.D. Pa. Jan. 3, 2008) (approving a $30,000 award for each class representative).  Thus, the Court should award service awards to the Class Representative in the amounts requested.  See Cook v. Niedert, 142 F.3d 1004, 1015 (7th Cir. 1998).

The Class Representative have been actively involved in this litigation since before it was commenced.  The information and documents provided by the Class Representative to Class Counsel were the basis for the filing of the Matthews v. BioTelemetry, Inc. d/b/a CardioNet lawsuit which will now benefit at least twenty-seven (27) employees.  The Class Representative met with Class Counsel to discuss his experiences, explain Defendant's payroll and timekeeping practices as well as the job duties and terms of employment of Class Members, provide information regarding the nature and constitution of the class of employees affected, supply testimony and documentation critical to Class Counsel investigation of the claims of Plaintiff and Class Members, and answer Class Counsel's questions.  The Class Representative also attended and participated in the mediation session with Judge Blewitt through which this proposed settlement was reached.[9]  The Class Representative was a substantial and necessary source of information upon which Class Counsel relied heavily.

The Class Representative was also willing to assume the risk associated with being a named plaintiff in a class action lawsuit against his current employer.  This risk not only extended to concerns regarding the prospect of retaliatory action within the context of his employment prospects with Defendant, but also concerns regarding potential blacklisting by

---

[9] Indeed, although Mr. Matthews was aware that his own individual damages with respect to unpaid overtime compensation would be relatively limited by the brevity of his tenure as Remote Holter Technician, he nevertheless undertook to drive approximately three hundred (300) miles from his home in Virginia Beach, VA to Philadelphia, PA in order to attend the October 11, 2018 mediation in person.  Plaintiff remained at the mediation well beyond normal business hours until departing around 7:00 pm, when he commenced his return trip.  However, due to an emergency closure of the Chesapeake Bay Bridge Tunnel, Plaintiff was greatly delayed in completing his trip and was forced to spend part of the night, until the bridge reopened, in his automobile.  Plaintiff's dedication to pursuing this matter on behalf of Class Members, as reflected by these circumstances, should be rewarded.

future employers.  Despite these very real fears, the Class Representative took the necessary steps to commence this action.

"Judges of this district have not hesitated to assure that those undertaking class litigation are not penalized for placing a class's interest above their own."  Cullen v. Whitman Medical Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000).  See also Briggs v. The Hartford Financial Servs. Group, Inc., Civ. A. No. 07-5190, 2009 WL 2370061, at *14 (E.D. Pa.  July 31, 2009); Mehling v. New York Life Ins. Co., 248 F.R.D. 455, 464 (E.D. Pa. 2008) (Kauffman, J.).  Moreover, the "Court has broad discretion to award payment to Class Representative for their efforts to benefit the class.  Hall v. Best Buy Co., Inc., Civ. A. No. 07-4724, 2011 WL 11-0377, at *13 (E.D. Pa. Mar. 24, 2011) (Rufe, J.).  "Factors courts use to evaluate the appropriateness of awards include the financial, reputational and personal risks to the Plaintiff; the degree to which the Plaintiff was involved in discovery and other litigation responsibilities; the length of the litigation; and the degree to which the named Plaintiff benefitted (or not) as a class member.  Hall, 2011 WL 1103755, at *15.  All of the aforementioned factors are present here and the Court should use its discretion to reward the Class Representative for his efforts which undoubtedly benefited the Settlement Class.

## VI.     CONCLUSION

The Settlement Class satisfies the certification standards under Rule 23 and 29 U.S.C. § 216(b).  The settlement embodied in the Settlement Agreement is fair, reasonable, and adequate under the Third Circuit's criteria for approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  There was an adequate opportunity to opt out of the settlement and to pursue individual remedies, as well as to submit a Proof of Claim and Consent to Join form in order to qualify for a payment from the Settlement Fund.  Accordingly, the Court should enter an Order

substantially in the form attached hereto as Exhibit 1, which will certify the settlement class,

grant the Class Representative a service award, and grant Plaintiff's Motion for Final Approval

of the Settlement Agreement.[10]


                                        **MURPHY LAW GROUP, LLC**


                            By:      /s/ Michael Groh
                                    Michael Murphy, Esquire
                                    Michael Groh, Esquire
                                    Eight Penn Center, Suite 2000
                                    1628 John F. Kennedy Blvd.
                                    Philadelphia, PA 19103
                                    TEL:   267.273.1054
                                    FAX:   215.525.0210
                                    murphy@phillyemploymentlawyer.com
                                    mgroh@phillyemploymentlawyer.com
                                    *Attorneys for Plaintiff*

Dated: April 15, 2019

---

[10] By a separately filed Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, Plaintiff will seek approval of Section 10 of the Settlement Agreement for payment of attorneys' fees and expenses.

29